IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIENGKHAM SINGANONH,<br><br>Plaintiff,<br><br>v.<br><br>K. LANGSLET, et al.,<br><br>Defendants. | No. 2:18-CV-00159-WBS-DMC-P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgment. (ECF No. 44-2). Defendants contend they are entitled to judgment because there is insufficient evidence to establish the essential elements of Plaintiff's claim that Defendants violated his First Amendment right to access the courts. Defendants also argue that they are entitled to qualified immunity. Because the Court recommends granting summary judgment on evidentiary grounds, it does not address the question of qualified immunity.

**I. PLAINTIFF'S ALLEGATIONS**

Plaintiff was an inmate at California Correctional Center ("CCC"). See ECF No. 18 at 1. He requested copies of non-legal documents, including court transcripts, "supporting facts," and correspondence with the attorney handling the appeal of his criminal conviction. Id. at

1

3, 6. He wanted copies for both his personal records and to send to his attorney to aid his appeal. Id. at 3. CCC's law librarian, Defendant Smith, declined to make copies because Plaintiff was not submitting the documents to court. Id.

Plaintiff appealed Smith's decision through CCC's grievance system. See id. at 4–5. Defendant Langslet, an Associate Warden, rejected Plaintiff's grievance at the first level of review. Id. Plaintiff then appealed Langslet's decision to Defendant Cagle, the Chief Deputy Warden. Id. Cagle likewise rejected Plaintiff's appeal. Id. at 6–7. Plaintiff contends that Defendants' collective denial of his requested copies inhibited his First Amendment right of access to the courts and effective litigation of his appeal. See id. at 3, 5, 6; see also ECF No. 36 at 7, 9.

## II.  THE PARTIES' EVIDENCE

### A.  Plaintiff's Noncompliance with Local Rule 260(b):

Local Rule 260(b) requires parties opposing motions for summary judgment to reproduce the itemized facts in the moving party's Statement of Undisputed Facts and admit the facts that are undisputed and deny those that are disputed. See L.R. 260(b). The opposing party must include with each denial a citation to the portion of any document supporting the denial. Id. Opposing parties may also include concise Statements of Disputed Facts encompassing all material facts over which there is a genuine dispute precluding summary judgment. Id. Plaintiff has not properly done either. Instead, Plaintiff newly raises a breach of contract claim and broadly repeats, without citation to any document on which he relies, the basic allegations in his complaint (that Defendants failed to provide him documents he believes he is entitled to). See ECF No. 48 at 1–4. Because Plaintiff has not complied with Rule 260(b), the Court deems Plaintiff to have admitted those facts not disputed by his complaint or other submissions. See, e.g., Beard v. Banks, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); Brito v. Barr, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020); see also Jones v. Blanas,

1  393 F.3d 918, 923 (9th Cir. 2004).

**B. Defendants' Request for Judicial Notice:**

Defendants request that the Court take judicial notice of Title 15, Section 3162 of the 2017 California Code of Regulations and selected pages of the 2017 California Department of Corrections and Rehabilitations Operations Manual ("DOM"). See ECF No. 45 at 1–2, Exs. A, B. Defendants attach both documents to their request as exhibits. See id. Exs. A, B. The documents set forth California regulations and California Department of Corrections and Rehabilitations ("CDCR") policies governing legal duplication services for inmates, including the types of documents that may be duplicated. See id.

Federal Rule of Evidence 201 permits the Court to take judicial notice of facts not subject to reasonable dispute because they are generally known or because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The court may take judicial notice of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Likewise, judicial notice is appropriate when government entities make information publicly available and neither party disputes the information's authenticity or accuracy. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). Courts may not, however, take judicial notice of disputed facts in public records. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Defendants' exhibits are government publications issued by the State of California and CDCR, a state agency. See ECF No. 45 Exs. A, B. They are matters of public record not subject to reasonable dispute and are capable of accurate, ready determination from sources whose accuracy cannot reasonably be questioned. See, e.g., Brown v. Valoff, 422 F.3d 926, 931 n.7 (9th Cir. 2005); see also Munoz v. Cal. Dep't of Corrs., No. CV 18-10264-CJC (KS), 2020 WL 5199517, at *3 (C.D. Cal. July 24, 2020); Greene v. Tilton, No. 2:09–cv–0793 JAM JFM (PC), 2012 WL 691704, at *5 (E.D. Cal. Mar. 2, 2012). Although Plaintiff disputes the application of the state regulations and DOM policies to his request for copies, he does not dispute their accuracy or authenticity. Indeed, Plaintiff's largely relies on the same CDCR policies across his submissions, contending that Defendants violated the policies. See, e.g., ECF

3

1  Nos. 8 at 3; No. 48 at 2. The Court thus **GRANTS** Defendants' request for judicial notice.

2      **C. Defendants' Evidence:**

3          Defendants contend the following facts are undisputed. Defendants' statement of
4  undisputed facts is supported by the declaration of Lucas L. Hennes and the attached exhibit;
5  namely, Defendants' deposition of Plaintiff. See ECF No. 44-4, Hennes Decl., Ex. A.

6          At the time he brought suit, Plaintiff was a prisoner at CCC. ECF No. 44-3 at 1.
7  Defendant Smith was CCC's supervising law librarian, Defendant Langslet was an Associate
8  Warden at CCC, and Defendant Cagle was CCC's Chief Deputy Warden. Id. at 2. In August
9  2017, Plaintiff requested a copy of a court transcript from the law library to send to the appellate
10 attorney who was working the direct appeal of his criminal conviction. Id. Defendant Smith
11 denied Plaintiff's request, telling him that he was not permitted to make copies of the transcript
12 because it was not going straight to court. Id. Plaintiff, throughout August and September 2017,
13 unsuccessfully tried to copy several other documents related to his conviction so that he could
14 send them to his attorney. Id. Plaintiff's attorney did not request any of the documents Plaintiff
15 tried to copy. Id. Instead, Plaintiff wanted to send them to her so that she would understand how
16 he wanted her to write the brief attacking his conviction. Id. He variously requested copies of
17 court transcripts and records, police reports, police statements, and supporting evidence from
18 trial. ECF No. 44-4, Hennes Decl., Ex. A at 31:20-25.

19         Plaintiff filed a grievance against Smith. Id. Langslet denied Plaintiff's grievance,
20 stating that CDCR regulations do not permit copy services for personal correspondence between
21 inmates and attorneys. Id. Cagle upheld Langslet's decision after Plaintiff appealed. Id. Cagle
22 informed Plaintiff that CDCR policies and regulations only permit legal duplication "for the
23 purposes of initiating or maintaining court action." Id. The respective denials of Plaintiff's
24 grievance were the only interaction Plaintiff ever had with both Langslet and Cagle. Id. at 3.

25         Plaintiff sent a letter to his attorney informing her that he was not able to make
26 copies of documents he wanted to send her. Id. He does not remember when he sent the letter. Id.
27 Nevertheless, Plaintiff's attorney never visited Plaintiff in prison while she worked on Plaintiff's
28 appeal. Id. She submitted Plaintiff's appellate brief without consulting Plaintiff or including the

arguments he wanted her to include. Id. Near the end of 2018, the appellate court notified Plaintiff that his petition had been denied. Id. Plaintiff's attorney never told Plaintiff that his petition was denied because Plaintiff was unable to make copies of documents that he wanted to send her. Id.

### D. Plaintiff's Evidence:

#### 1. Plaintiff's New Breach of Contract Claim:

In his opposition to Defendants' Motion for Summary Judgment, Plaintiff repeats the allegations from his complaint. See ECF No. 48 at 2. He also raises, for the first time, a breach of contract claim. Id. at 2–3. Plaintiff's new claim seemingly alleges that the DOM is a contract obliging Defendants to give Plaintiff copies of the non-legal documents he wanted. Id. But Plaintiff's complaint is bereft any facts alleging the existence of a contract, let alone the breach of a contract. See ECF No. 8. Defendants, consequently, did not receive fair notice that Plaintiff intended to pursue a contractual claim. See Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968–69 (9th Cir. 2006); Riley v. Friedrichs, No. 18-02283 EJD (PR), 2019 WL 2476671, at *9 (N.D. Cal. June 12, 2019); Pena v. Taylor Farms Pacific, Inc., No. 2:13–CV–01282–KJM–AC, 2014 WL 1330754, at *3–5 (E.D. Cal. Mar. 28, 2014).

The Federal Rules of Civil Procedure require that the allegations in a complaint give defendants fair notice of the plaintiff's claims and the grounds upon which they rest. E.g., Pickern, 457 F.3d at 968; Pena, 2014 WL 1330754, at *5. If a complaint does not include sufficient factual allegations to raise a claim, a plaintiff must amend the complaint or otherwise supplement the allegations. Pena, 2014 WL 1330754, at *5. Hammering a new claim into an opposition brief is impermissible. See id. The Court will not consider Plaintiff's new theory.

#### 2. Plaintiff's Submitted Evidence:

Plaintiff fails to challenge most of Defendants' evidence. As mentioned, he broadly restates the allegations from his complaint in his opposition to Defendants' motion for summary judgment. See ECF No. 48 at 2. The Court has deemed admitted any of Defendants' evidence that Plaintiff's submissions do not dispute in his opposition or elsewhere.

Plaintiff attaches to his opposition a copy the document duplication policies listed in the DOM. Id. at 5. His complaint is supported by copies of his grievances against Defendants,

5

1    Cagle's and Langslet's written rejections of Plaintiff's grievances, and another copy of the
2    duplication policies. See ECF No. 6. In his reply to Defendants' Answer, Plaintiff also submits
3    copies of the duplication policies, the written rejections of his grievances, and what are apparently
4    directions from the State Bar of California for an attorney complaint process. See ECF No. 36. He
5    also attaches a letter from his attorney to CCC Warden Eliot Spearman. Id. at 2–3. The letter asks
6    Warden Spearman to return documents confiscated from Plaintiff after an unidentified incident
7    led to CCC confining Plaintiff to administrative segregation. Id. at 2.

8          Langslet's rejection of Plaintiff's grievance at the first level of review states that
9    Plaintiff sought personal copies of correspondence with his lawyer and "other papers." ECF No. 6
10   at 4. Langslet cited section 3162(b) of Title 15 of the California Code of Regulations, which
11   states "[l]egal duplication services may be provided to inmates for purposes of initiating or
12   maintaining a court action" Id. Langslet denied the grievance because section 3162(b) does not
13   address personal correspondence with a lawyer. Id.

14         Cagle echoed Langslet when he denied Plaintiff's appeal at the second level of
15   review. Id. at 6–7. He cited section 3162(b) and quoted sections of the DOM governing
16   duplication services. Id. The DOM policies reproduce section 3162(b), state that copy services are
17   provided to inmates for the preparation of "legal documents," and define legal documents as
18   including pleadings, writ and appellate petitions, in forma pauperis motions, and exhibits when
19   attached to petitions for the Supreme Court of California. Id. Cagle denied Plaintiff's appeal
20   because he had "not provided any evidence that [he] presented any legal documents to library
21   staff and [was] denied the ability to make copies." Id. The documents that Plaintiff requested,
22   such as personal and civil correspondence with his attorney, are not considered legal documents
23   and Plaintiff provided no evidence he was initiating or maintaining a court action. Id.

24         Relevantly to Plaintiff's claim, the DOM policies define *non-legal* documents to
25   include court transcripts and correspondence with attorneys. Id. at 10. Plaintiff largely does not
26   contradict Defendants' evidence. He relies on his submissions—particularly the duplication
27   policies—as evidence of Defendants' alleged violation of his right to access to the courts. See,
28   e.g., ECF Nos. 18 at 3–8; 36 at 7–10; 48 at 2. His dispute thus appears to boil down to one of

interpretation of evidence. Namely, Plaintiff's interpretation of the duplication policies as permitting the copies he wanted and, consequently, his interpretation of Smith's, Langslet's, and Cagle's denial of those copies as invalid and ultimately resulting in a constitutional violation.

### III. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

1  Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
2  return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436
3  (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than
4  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record
5  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
6  'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).  It is sufficient that "the
7  claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions
8  of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.
9     In resolving the summary judgment motion, the court examines the pleadings,
10  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.
11  <u>See</u> Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, <u>see</u> <u>Anderson</u>,
12  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the
13  court must be drawn in favor of the opposing party, <u>see</u> <u>Matsushita</u>, 475 U.S. at 587.
14  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
15  produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen</u>
16  <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.
17  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the
18  judge, not whether there is literally no evidence, but whether there is any upon which a jury could
19  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is
20  imposed." <u>Anderson</u>, 477 U.S. at 251.
21
22         **IV.  DISCUSSION**
23     Plaintiff claims that Defendants violated his First Amendment right of access to
24  the courts. <u>See, e.g.</u>, ECF Nos. 18 at 3–8; 36 at 7–10; 48 at 2. He contends that Defendants
25  violated that right when they refused to permit him to make copies of non-legal documents,
26  resulting in his inability to send the copies to his lawyer and, in his view, the denial of his appeal.
27  <u>See</u> ECF Nos. 18 at 3–8; 36 at 7–10; 48 at 2; <u>see also</u> ECF No. 44-4, Hennes Decl., Ex. A at 20:
28  2–4. Defendants assert they are entitled to summary judgment because Plaintiff has not

established any injury and, if he has, Defendants are not the proximate cause of his injury. ECF No. 44-2.

### A. First Amendment Right of Access of the Courts:

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on other grounds as stated by, Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). But the right does not require a particular methodology. Lewis, 518 U.S. at 356. It guarantees the "*capability* of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. (emphasis added). It does not promise to turn inmates into effective litigators. See id. at 354–55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to discover claims or litigate them effectively once filed. See Lewis, 518 U.S. at 354–55; Phillips, 477 F.3d at 655. The tools required are those that inmates need to attack their sentences or challenge conditions of confinement. See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655. The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions. Lewis, 518 U.S. at 353 n.3, 354–56.

The United States Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit. Id. at 413. The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases look "backward to a

time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414.

To establish an access to the courts violation, a prisoner must identify an actual injury. Lewis, 518 U.S. at 349–351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional requirement and may not be waived. See Lewis, 518 U.S. at 348–52; Urmancheev, 2019 WL 1904818, at *2. And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414–18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB P, 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

Plaintiff's claim is backward-looking. He effectively claims that Defendants' refusal to allow him to make copies of non-legal documents resulted in an inability to pursue his appeal and, ultimately, to the denial of his appeal. See, e.g., ECF Nos. 18 at 3, 5, 6; 36 at 8; 48 at 2; see also ECF No. 44-4, Hennes Decl., Ex. A at 20: 2–4. He must adequately plead the elements above. See Harbury, 536 U.S. 418; Urmancheev, 2019 WL 1904818, at *2–3.

**B. Plaintiff Fails to Establish an Actual Injury or Loss of Non-frivolous Claim:**

Defendants argue that the Plaintiff has failed to identify an actual injury. The Court agrees. Defendants properly demonstrate that Plaintiff has shown neither actual prejudice nor the loss or frustration of a meritorious claim that cannot now be tried. Urmancheev, 2019 WL 1904818, at *2; Camposeco v. Bordeaux, No.: 1:19-cv-01330 BAM (PC), 2020 WL 5984420, at *6 (E.D. Cal. July 31, 2020). The failure of CCC to permit copies of non-legal documents without some demonstrated impact on Plaintiff's appeal is insufficient to establish an actual injury. See Harbury, 536 U.S. at 414–15; Lewis, 518 U.S. at 352–53. Although Plaintiff was denied the

1  copies, nowhere does the record show that he was denied the tools necessary to attack his
2  conviction. See Lewis, 518 U.S. at 355. Plaintiff's attorney litigated his appeal to completion. See
3  ECF No. 44-3 at 2–3. Indeed, other than dissatisfaction with how his attorney handled his appeal,
4  there is no evidence that Plaintiff's ability to bring *any* claims to court was hindered. Undisputed
5  evidence indicates that had Plaintiff been preparing legal documents for submission to court,
6  CCC would have permitted copies. See, e.g., ECF No. 44-3 at 2; ECF No. 45, Ex. B at 8. Plaintiff
7  might have preferred to litigate his case in a particular way or to have documents he requested,
8  but prisoners' right of access to courts is fairly limited. See Lewis, 518 U.S. at 354–55; Phillips,
9  477 F.3d at 656; Madrid v. Gomez, 190 F.3d 990, 995–96 (9th Cir. 1999). The Constitution
10 requires prisoners be able to attack their convictions, not that they be able to litigate effectively
11 once in court. Lewis, 518 U.S. at 354–55. No evidence shows that CCC denied Plaintiff's ability
12 to appeal his conviction. See id. Impairment of any other preferred litigating capacity is a
13 constitutional incident of Plaintiff's conviction and incarceration. See id. at 355.

14       Evidently, Plaintiff wanted to copy correspondence with his attorney, court
15 transcripts, police reports, and other exhibits from his underlying trial so that his attorney would
16 understand how Plaintiff wanted her to write his brief. See, e.g., ECF No. 18 at 1; ECF No. 44-4,
17 Hennes Decl., Ex. A at 31:20-25. But Defendants' undisputed evidence indicates that Plaintiff's
18 attorney neither requested the documents Plaintiff wanted to copy nor said that they were required
19 to litigate a meritorious assignment of error on appeal. See ECF No. 44-3 at 3. There is no
20 evidence, other than conclusory implications in Plaintiff's submissions, that the outcome of
21 Plaintiff's rejected appeal would have been different had CCC's legal assistance policies
22 permitted Plaintiff to copy the documents he wanted. Although the Supreme Court has indicated
23 that an injury might involve frustration of an ability to obtain a particular result or type of relief in
24 a case that ended poorly, there is no evidence that Plaintiff's appeal was such a case. See
25 Harbury, 536 U.S. at 414–15. Inmates cannot establish an actual injury by alleging that a prison's
26 legal assistance programs are "subpar in some theoretical sense." Lewis, 518 U.S. at 351, 352–56.
27 Plaintiff must demonstrate that the alleged deficiencies in CCC's legal assistance programs
28 hindered his efforts to pursue a claim. Id. at 351. He has not done so. See id. at 351–56.

**C. Plaintiff Fails to Establish a Genuine Issue for Trial:**

An actual injury is jurisdictional. See Lewis, 518 U.S. at 349–52, 350 n.1. It is an essential element of a First Amendment access to the courts claim. See Harbury, 536 U.S. at 414–18; Camposeco v. Bordeaux, 2020 WL 5984420, at *6; Urmancheev, 2019 WL 1904818, at *2–3; Kabede, 2017 WL 714300, at *6. As discussed above, Defendants have demonstrated the absence from the record of an actual injury to Plaintiff. Cf. Catrett, 477 U.S. at 323 (stating that summary judgment is appropriate against a party who fails to establish an essential element of that party's case). The burden thus shifts to Plaintiff to show that a genuine issue as to any material fact actually exists. Matsushita, 475 U.S. at 586; see Robinson v. Kaweah Delta Hosp., No. CV F 09–1403 LJO GSA, 2010 WL 4644414, at *3 (E.D. Cal. Nov. 5, 2010). Plaintiff has not done so. He merely repeats the allegations and denials of his pleadings in addition to alleging an incoherent breach of contract claim. See, e.g., ECF No. 48 at 1–4. But that repetition is insufficient. When endeavoring to establish the existence of a factual dispute, Plaintiff cannot simply rely upon the allegations or denials of his pleadings. Matsushita, 475 U.S. at 586 n. 11. He is required to tender evidence of specific facts in the form of affidavits or admissible discovery material, in support of his contention that a dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n. 11. Although Plaintiff submits copies of CCC's duplication policies and the various rejections of his grievances, they do not establish that he suffered an actual injury.

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which that party will bear the burden of proof at trial. See Catrett, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323. Because Plaintiff has failed to establish an actual injury, which is an essential element of his claim, or any other genuine dispute as to any material fact, summary judgment against him is appropriate. See id. at 322–23; Robinson, 2010 WL 4644414, at *3.

///

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion for summary judgment (ECF No. 44-2) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 9, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE